IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BRANDI R. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:14-cv-00046 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CARDIOLOGY CLINIC, INC., and ) | By: Hon. Jackson L. Kiser |
| HEALTHCARE MANAGEMENT ) | Senior United States District Judge |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants' motion for summary judgment. The parties have fully briefed the motion, and I have reviewed counsel's arguments and the relevant filings, including the materials permitted under my Order of July 8, 2016 [ECF No. 72]. For the reasons stated herein, I will grant Defendants' motion.

### I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

On October 3, 2014, Brandi R. Taylor ("Plaintiff") filed the present action against Cardiology Clinic, Inc., ("Cardiology Clinic") and Healthcare Management Services, Inc., ("HMS") (together, "Defendants"). Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), she alleges that Defendants unlawfully fired her for being pregnant. (See Compl. ¶¶ 20–24, Oct. 3, 2014 [ECF No. 1].) Defendants move for summary judgment, arguing that they had too few Title VII "employees" to be a Title VII "employer."[2]

---

[1] On Defendants' motion, the facts are considered in the light most favorable to Plaintiff, and reasonable inferences are drawn in her favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009).

[2] Alternatively, Defendants argue that they did not discriminate against Plaintiff. There is no occasion to pursue this inquiry. The employee-numerosity requirement's failure resolves the action.

Defendants were formally-independent but closely-related entities. Suman Chauhan ("Dolly") was "the president and owner of [HMS]," "the only officer and sole director of the corporation" as well as the "sole shareholder." (Dep. of Suman Chauhan 24:02–17, 25:09–14, Jan. 14, 2016 [ECF No. 58-11] (hereinafter "Dolly's Jan. Dep.").) Dr. Ajit Chauhan, Dolly's husband, was the sole shareholder, sole director, and sole officer of Cardiology Clinic (id. at 24:18–23, 25:01–05, 25:15–18), though Dolly drew a paycheck for "supervis[ing] and manag[ing] the office" as Cardiology Clinic's office manager (id. at 24:24–25, 25:19–22).

Defendants' offices were on the same site in Danville (id. at 21:09–23), and Defendants had a "business relationship" (id. at 9:12–13).[3] In short, HMS "leased medical health care workers for a medical practice, . . . the Cardiology Clinic." (Id. at 9:15–18, 20:19–21.) HMS "manag[ed] and provid[ed] the staffing, the hiring and the firing and all HR-related issues with those leased employees." (Id. at 21:01–03.) The companies' 2013 quarterly reports to the Virginia Employment Commission ("VEC") reflect this relationship.[4] For that year, only Dolly and Dr. Chauhan are listed on Cardiology Clinic's reports (Defs.' Mot. for Summ. J. ex. F, at pgs. 2, 5, 8, 11, May 20, 2016 [ECF No. 58-7] (hereinafter "Cardiology Clinic's Quarterly Tax Reports")), while HMS' reports reveal a monthly average of just over thirteen "employees" (as termed by the reports). (See Defs.' Mot. for Summ. J. ex. E, at pgs. 2, 4, 6, May 20, 2016 [ECF No. 58-6] (hereinafter "HMS' Quarterly Tax Reports").) The biweekly payroll journals refelect

---

[3] For its lifespan, HMS was located on the site of Cardiology Clinic and leased employees only to Cardiology Clinic. (Dep. of Suman Chauhan 23:03–24:01, Jan. 14, 2016 [ECF No. 65-2].)

[4] In Virginia, "[e]ach employer . . . shall report to the [VEC] for each calendar quarter all the information concerning the number of workers subject to the [Virginia Unemployment Compensation Act] and the total wages payable with respect to employment in all pay periods ending within each such quarter." 16 Va. Admin. Code § 5-32-20. Certain false statements are punishable as Class 1 misdemeanors. See Va. Code Ann. § 60.2-518 (2016).

similar numbers.[5] (Compare Defs.' Mot. for Summ. J. ex. B, May 20, 2016 [ECF No. 58-3] (hereinafter "Cardiology Clinic's 2013 Payroll Journals"), with Defs.' Mot. for Summ. J. ex. C, May 20, 2016 [ECF No. 58-4] (hereinafter "HMS' 2013–14 Payroll Journals") (this average not accounting for adjustments on the exhibit's cover sheet)).

In January 2014, however, HMS dissolved. (Dolly's Jan. Dep. at 9:23–25, 10:01–02.) Cardiology Clinic absorbed several, but not all,[6] of HMS' employees and added some others. (See id. at 13:19–25, 14:05–07. Compare Cardiology Clinic's Quarterly Tax Reports at pg. 14, with HMS' Quarterly Tax Reports at pg. 10.) Essentially, Cardiology Clinic began to staff itself.[7] Having been a medical assistant at HMS since July 2013, Plaintiff was not among those retained by Cardiology Clinic in January 2014. (See Dep. of Brandi R. Taylor 9:11–17, 38:10–39:05, Feb. 1, 2016 [ECF No. 65-1] (hereinafter "Pl.'s Taylor Dep.").) For reasons explained elsewhere, see supra note 2, Plaintiff claims this to have been a discriminatory firing on account of her pregnancy (see Compl. ¶¶ 20–24).

On the number of Defendants' employees, Plaintiff testified at her deposition that there were fifteen to sixteen—counting Dolly and Dr. Chauhan—while she was employed. (Dep. of

---

[5] "Paychex Corporation" had a service that handled Defendants' payroll. (Dolly's Jan. Dep. at 14:22–23.) "[T]he only information reported to Paychecks was reported by the company" (Dep. of Suman K. "Dolly" Chauhan 79:06–09, Apr. 25, 2016 [ECF No. 58-12] (hereinafter "Dolly's Apr. Dep.")), and the Chauhans maintain that "[a]nybody who worked for [Defendants] was on [their] payroll through Paychex Corporation" (Dolly's Jan. Dep. at 51:06–07; Dolly's Apr. Dep. at 80:05–20; Dep. of Ajit S. Chauhan 22:10–11, May 20, 2016 [ECF No. 58-9]) and that they paid no employees in cash (Dolly's Apr. Dep. at 81:14–23; Dep. of Ajit S. Chauhan at 23:14–24:01, 24:13–17).

[6] According to Dolly, the factors favoring one's retention by Cardiology Clinic were time working with Defendants as well as "certifi[cation], train[ing] in specific medical professional positions, as well as . . . cardiac experience." (Dolly's Apr. Dep. at 95:22–96:05.)

[7] Reflecting this change, its 2014 reports to the VEC average just under thirteen "employees" (as termed by the reports) per month (see Cardiology Clinic's Quarterly Tax Reports at pgs. 13, 15, 17, 19) and its biweekly payroll journals showed a fraction less (see Defs.' Mot. for Summ. J. ex. D, May 20, 2016 [ECF No. 58-5] (hereinafter "Cardiology Clinic's 2014 Payroll Journals") (this average not accounting for adjustments on the exhibit's cover sheet)).

Brandi R. Taylor 58:17–59:04, Feb. 1, 2016 [ECF No. 58-10].) She also testified that Defendants had several employees who do not appear on Defendants' VEC reports or payroll journals. "[I]n cardiolites," there was an "Amanda" ("Amanda LNU" [Last Name Unknown]) of whose last name Plaintiff was uncertain.[8] (Pl.'s Taylor Dep. at 18:13–14.) "She was there when [Plaintiff] got there and she was there when [Plaintiff] left." (Id. at 18:21–24.) Amanda LNU worked about "three days a week, . . . Monday through Thursday . . . or Tuesday through Thursday." (Id. at 19:04–06.) "Laura Fallon" was another. (Id. at 18:14–15.) Plaintiff contends she started and ended while Plaintiff was there (id. at 21:01–08), but Plaintiff seemed unfamiliar with other details (see id. at 24:12–13). "Kimberly Crane" worked "for the front office," "checking in, checking out patients." (Id. at 23:08–16.) Plaintiff testified that she started after Plaintiff and departed before her. (Id. at 23:17–20.) Handwritten in, Crane appears on a schedule for September 23–27, 2013, set to work 9:00 a.m. to 5:35 p.m., a total of 8.58 hours that week. (Mem. in Opp'n to Mot. for Summ. J. ex. 7, at pg. 2, June 17, 2016 [ECF No. 65-7] (hereinafter "Schedule of Sept. 23–27, 2013".)[9] "Sharon Scearce" is also handwritten into that schedule,

---

[8] Dolly acknowledged that Plaintiff "states Amanda LNU may or may not be Amanda Donato." (Chauhan Decl. ¶ 5, June 27, 2016 [ECF No. 66-1] (hereinafter "Dolly Decl.").) "The only other Amanda that would appear at [the] medical clinic in 2013 was Ms. Easterling," who "was never an employee of Cardiology Clinic or [HMS]" but, rather,

> an employee of University Nuclear & Diagnostics, . . . with which [Defendants] had a contract to provide nuclear testing on patients. Ms. Easterling was a nuclear technician who operated medical testing equipment owned by her employer, University Nuclear & Diagnostics. Neither [HMS] nor Cardiology Clinic compensated Ms. Easterling because she was employed and supervised by this third party contractor.

(Id.) Plaintiff responded: "Easterling worked alongside of all of the other HMS/Cardiology Clinic employees as a regular employee while I worked there." (Taylor Decl. ¶ 4, July 14, 2016 [ECF No. 73].)

[9] Dolly declared that Crane "completed a working interview with [HMS] on September 24, 2013. [She] was not hired after this interview, which lasted one day and she was never an employee of [HMS] or Cardiology Clinic . . . ." (Dolly Decl. ¶ 4.) Plaintiff responded: "HMS/Cardiology Clinic never provided

though for no days and no hours. (Id.)[10] "Lori Dixon" appears, scheduled for Monday from 9:54 a.m. to 5:05 p.m. with a total of 7.18 hours in the week of October 21–25, 2013. (Mem. in Opp'n to Mot. for Summ. J. ex. 10, at pg. 2, June 17, 2016 [ECF No. 65-10].)[11]

## II. STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Insofar as the facts are genuinely disputed, they are "viewed in the light most favorable to the nonmoving party . . . ." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "A genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wilkins v. Montgomery, 751 F.3d 214, 220 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). To that end, the nonmoving party must have in her favor "specific facts"—"more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). All in all,

---

day-long on the job interviews while I worked there. If a name appeared on the schedule, it was because they were an employee." (Taylor Decl. ¶ 3.)

[10] Dolly declared that Scearce "was scheduled to interview for a position with [HMS] on September 23, 2013. She did not appear for this interview and was never an employee of [HMS]." (Dolly Decl. ¶ 3. But see Taylor Decl. ¶ 3 (denying such an interview process and affirming, instead, employment).)

[11] On brief, Plaintiff makes something of "Breanne Blair" appearing on HMS' quarterly report of June 30, 2013, even though she does not appear in the payroll journals for this time; however, it seems that Blair's inclusion on that quarterly report owes merely to her final check (for work March 16–29) being paid in April, i.e., in the new quarter. (Compare HMS' Quarterly Tax Reports at pg. 4 (totaling $123.25 wages paid in the quarter), with HMS' 2013–14 Payroll Journals at pg. 20 (totaling $123.25 earnings for the pay period).)

On brief, Plaintiff does not count, but only notes, a "Penny S" (the last name is illegible) and a marked-out "Betty Ann Garmon" on the schedule for October 7–11, 2013. (Mem. in Opp'n to Mot. for Summ. J. ex. 9, at pg. 2, June 17, 2016 [ECF No. 65-9].) Nor does she count a whited-out entry for September 30 – October 4, although she notes it. (Mem. in Opp'n to Mot. for Summ. J. ex. 8, at pg. 2, June 17, 2016 [ECF No. 65-8].)

summary judgment is appropriate "[w]here the unresolved issues are primarily legal rather than factual." See Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004). A court's task is simply "to determine whether there are issues to be tried." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2712, at 206 (2007).

### III. DISCUSSION

"An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant." Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015). This requirement begets the "employee-numerosity requirement," by which Congress intended "[t]o spare very small businesses from Title VII liability . . . ." Arbaugh v. Y&H Corp., 546 U.S. 500, 504–05 (2006). To be a Title VII "employer," an entity must "ha[ve] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (2016).[12] A plaintiff "bears the burden of proving the number of employees, including the duration of their employment, 'with some element of precision.'" Wilson v. Comtrust LLC, 249 F. Supp. 2d 993, 997 (N.D. Ill. 2003) (quoting Norman v. Levy, 767 F. Supp. 1441, 1449 (N.D. Ill. 1991)).

At oral argument, Plaintiff's counsel conceded that, in this case, the only year in issue is 2013. Accordingly, the question is whether Defendants had requisite Title VII "employees" in that year to be a Title VII "employer."[13] Before getting to the headcount, I consider whether the Chauhans are to be counted.

---

[12] "Courts consistently have held that the phrase 'current calendar year' refers to the year in which the alleged discrimination occurred." Komorowski v. Townline Mini-Mart & Rest., 162 F.3d 962, 965 (7th Cir. 1998) (collecting cases); e.g., Richardson v. K.C. Concepts, LLC, No. CA 6:08-3186-HMH-BHH, 2010 WL 500418, at *9 (D.S.C. Feb. 4, 2010); Spencer v. Morningside Police Dep't, No. 8:01-CV-03746-PJM, 2002 WL 32356380, at *2 (D. Md. July 24, 2002).

[13] For purposes of this motion, the parties treat Cardiology Clinic and HMS as one entity. Cf. Butler, 793 F.3d at 408 & n.3 (explaining the "joint employer" and "integrated employer" doctrines).

- 6 -
Case 4:14-cv-00046-JLK-RSB   Document 75   Filed 07/19/16   Page 6 of 12   Pageid#: 873

A. <u>Except for Dolly as Cardiology Clinic's office manager, the Chauhans were not Defendants' "employees."</u>

I must first determine whether Dolly—the president, owner, and sole shareholder and director of HMS—and Dr. Chauhan—the sole shareholder, officer, and director of Cardiology Clinic—were "employees" of either entity.

"[T]he answer to whether a shareholder-director is an employee or an employer cannot be decided in every case by a shorthand formula or magic phrase." <u>Echevarria v. Insight Med., P.C.</u>, 72 F. Supp. 3d 442, 457 n.10 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). Rather, "the focus of inquiry should be on 'the common-law touchstone of control.'" <u>Bragg v. Orthopaedic Assocs. of Va., Ltd.</u>, No. CIV A 206CV347, 2007 WL 702786, at *3 (E.D. Va. Mar. 2, 2007) (quoting <u>Clackamas Gastroenterology Assocs. v. Wells ("Clackamas")</u>, 538 U.S. 440, 449 (2003)).[14] With that focus, the Supreme Court has identified six nonexclusive factors,[15] which collapse neatly into the following:

> "[A]n employer is the person, or group of persons, who owns and manages the enterprise. The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed. . . ." When deciding whether shareholder-directors were employees, no one factor should be decisive . . . , but all aspects of the relationship should be considered.

---

[14] Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). This "is a 'nominal definition' that is 'completely circular and explains nothing.' . . . [T]he courts have concluded that Congress intended to describe the conventional master-servant relationship as understood in common law agency." <u>Walls v. Avpro, Inc.</u>, No. CIV. JFM-04-3042, 2005 WL 855931, at *1 (D. Md. Apr. 14, 2005) (quoting <u>Clackamas</u>, 538 U.S. at 444), <u>aff'd</u>, 162 F. App'x 252 (4th Cir. 2006).

[15] Those factors are (1) "[w]hether the organization can hire or fire the individual or set the rules and regulations of the individual's work," (2) "[w]hether and, if so, to what extent the organization supervises the individual's work," (3) "[w]hether the individual reports to someone higher in the organization," (4) "[w]hether and, if so, to what extent the individual is able to influence the organization," (5) "[w]hether the parties intended that the individual be an employee, as expressed in written agreements or contracts," (6), and "[w]hether the individual shares in the profits, losses, and liabilities of the organization." <u>Clackamas</u>, 538 U.S. at 449–50 (quoting <u>EEOC Compliance Manual</u> § 605:0009.10).

Bluestein v. Central Wisc. Anesthesiology, S.C., 769 F.3d 944, 952 (7th Cir. 2014) (quoting Clackamas, 538 U.S. at 450).

Here, the evidence is clear that Dr. Chauhan was not Cardiology Clinic's "employee" as Dolly was not HMS'. Respectively, each had total, unrivaled authority as the sole shareholder, sole director, and sole officer. Nothing seriously suggests that either was an employee of his or her own company,[16] and neither will be counted as such.

That said, Dolly was an "employee" of Cardiology Clinic. The analysis "address[es] not only the extent of an individual's control, but also 'the source of an individual's authority' to control." Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 767 (3d Cir. 2013) (quoting Smith v. Castaways Family Diner, 453 F.3d 971, 983 (7th Cir. 2006)).[17] Under the latter, a court "consider[s] whether [that individual] 'exercises the authority by right, or whether [she] exercises it by delegation at the pleasure of others who ultimately do possess the right to control the enterprise." Id. at 768 (quoting Smith, 453 F.3d at 984). Dolly was Cardiology Clinic's officer manager. Although she wielded authority and had a management role, that all came by delegation from the sole shareholder, sole director, and sole officer of Cardiology Clinic—Dr. Chauhan. Dolly was a Title VII "employee" for Cardiology Clinic.

The analysis proceeds, counting Dolly as an employee only in her role as Cardiology Clinic's office manager.

---

[16] Here, neither tax treatment nor terminology diminish (or even speak to) the central question of control. Cf., e.g., Bluestein, 769 F.3d at 955–56. Nor does Defendants' corporate form. See Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 767 (3d Cir. 2013) ("Clackamas's application is not limited to professional corporations. . . . [T]he nature of the business entity is simply an attribute of the employment relationship that must be considered in applying the Clackamas test . . . ."); e.g., Walls, 2005 WL 855931, at *2 n.1. To recapitulate, "'[e]mployers' are those whose authority and interests are so aligned with the business as to render them the legal personification of the business, i.e., principals rather than agents." Smith v. Castaways Family Diner, 453 F.3d 971, 978 (7th Cir. 2006). The Record clearly personifies Cardiology Clinic as Dr. Chauhan and HMS as Dolly.

[17] This consideration seems implicit in the first and fourth Clackamas factors. Mariotti, 714 F.3d at 767, 768; Smith, 453 F.3d at 983.

B. In 2013, Defendants did not have fifteen or more employees for each working day in each of twenty or more calendar weeks.

"[A]n employer 'has' an employee if he maintains an employment relationship with that individual." Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 207 (1997). "Control loses some of its significance in the determination whether an individual is an employee in those situations in which compensation is not evident," Haavistola v. Cmty. Fire Co. of Rising Sun, 6 F.3d 211, 220 (4th Cir. 1993); accordingly, courts use a "test . . . generally called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll," see Walters, 519 U.S. at 206, 207, 211.[18] "The payroll method allows for calculating the . . . 15–employee threshold merely by knowing whether a particular employee was on the payroll during a particular time frame." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 45 (1st Cir. 2013).[19] Still, "inclusion on payroll does not necessarily equate to employment if the individual would not be an employee under traditional agency principles . . . ." Wooten v. Epworth United Methodist Church, No. 1:06CV778, 2007 WL 2049011, at *4 (M.D.N.C. July 11, 2007); see also Walters, 519 U.S. at 211–12.

In 2013, Defendants combined for at least fifteen paid persons in the following periods: October 12–25, the first half of October 26 – November 8, the second half of November 23 – December 6, and December 7–20. (Compare HMS' 2013–14 Payroll Journals at pgs. 65–67, 68–

---

[18] Courts have also considered quarterly reports to state or territorial authorities. See, e.g., Escribano-Reyes v. Professional HEPA Certificate Corp., 817 F.3d 380, 384 (1st Cir. 2016); E.E.O.C. v. Pizza & Sub Express, Inc., No. 3:09-CV-85-CDL, 2010 WL 3715751, at *3, 4–5 (M.D. Ga. Sept. 13, 2010); Yost v. Clark Enters. 2000, No. 06-1274-JTM, 2007 WL 163764, at *1 (D. Kan. Jan. 19, 2007); Revels v. Hardwire, LLC, No. CIV.A. RDB 05-3244, 2006 WL 4662503, at *3 (D. Md. June 14, 2006), aff'd, 210 F. App'x 311 (4th Cir. 2006); Owens v. S. Dev. Council, Inc., 59 F. Supp. 2d 1210, 1214 & n.2 (M.D. Ala. 1999), aff'd, 228 F.3d 415 (11th Cir. 2000).

[19] Clearly, this "does not have to be 'an incredibly complex [or] expensive factual inquiry.'" Daggitt v. United Food & Commercial Workers Int'l Union Local 304A, 59 F. Supp. 2d 980, 982 (D.S.D. 1999) (quoting Walters, 519 U.S. at 210), aff'd, 245 F.3d 981 (8th Cir. 2001); see Cameron v. Mid-Continent Livestock Supplements, Inc., 211 F. Supp. 2d 1120, 1125 (E.D. Mo. 2002) (mentioning the method's utility "[f]or counting purposes and to ease the discovery burden").

70, 74–76, 77–79, with Cardiology Clinic's 2013 Payroll Journals at pgs. 15 (month of October), 18 (month of December)). There is a November gap in Dolly's pay from Cardiology Clinic, but her significant and ongoing relationship with Defendants reasonably implies that she maintained her employment relationship during that month. Accounting for Dolly's inclusion in November brings the second half of October 26 – November 8 and the first half of November 23 – December 6 into count, as well as November 9–22. (See HMS' 2013–14 Payroll Journals at pgs. 68–70, 71–73, 74–76.) Assuming without deciding that Defendants maintained those numbers for each working day in these periods,[20] they fall ten weeks short of the requirement.

On brief, Plaintiff argues for ten more weeks.[21] By adding Amanda LNU, Plaintiff's tabulations reach fifteen employees in four weeks: August 3–16 and December 21, 2013 – January 3, 2014. She argues fifteen employees in two more weeks, July 20 – August 2, by adding Amanda LNU and Jessie Setiff. Plaintiff would add the other four weeks as follows: September 14–27 (reaching sixteen employees by adding Amanda LNU, Fallon, Crane, and Scearce) and September 28 – October 11 (reaching sixteen by adding Amanda LNU and Fallon). She supports these persons' inclusion with her own sworn statements as to Amanda LNU and Fallon, similar statements and a work schedule as to Crane, a gap in payroll entries as to Setiff, and a work schedule as to Scearce. This support fails to put these periods of employment into genuine issue.

Neither Defendants' payroll journals nor their quarterly reports to the VEC list these individuals' names for these periods, and these sources do not even include Fallon, Crane, Scearce, or Amanda LNU (unless she is Donato). The most that could identify an employment relationship between Defendants and Amanda LNU is Plaintiff's assertions of Amanda LNU's role, working about three days a week, and vague timeframe of employment. (See Pl.'s Taylor

---

[20] Perhaps these numbers might be whittled down further. The undertaking is unnecessary here.

[21] This number accounts for Dr. Chauhan's exclusion.

Dep. at 18:13–14, :21–24, 19:04–06. Compare Dolly Decl. ¶ 5 (detailing Easterling's role and her working at Cardiology Clinic as an employee of a third-party contractor), with Taylor Decl. ¶ 4 (asserting, in conclusory fashion, that Easterling was "a regular employee").) A fourteen-week gap interrupts Setiff's presence in the payroll journals (see HMS' 2013–14 Payroll Journals at pgs. 27–50), and Plaintiff merely asserts on brief that this was a leave period, during which Setiff maintained an employment relationship with Defendants.[22] For Fallon, there is only a vague estimation of her time with Defendants. (Pl.'s Taylor Dep. at 18:14–15, 21:01–08.) Crane's employment finds support from Plaintiff's general assertion of her time and role with Defendants as well as an entry of 8.58 hours of work on one day. (Id. at 23:08–20; Schedule of Sept. 23–27, 2013, at pg. 2.) Scearce's name appears only on that schedule, with no time scheduled. (Schedule of Sept. 23–27, 2013, at pg. 2.) The evidence is too vague to create *genuine* questions of employment relationships or their duration.[23]

Plaintiff needs all ten of the weeks she asserts beyond the payrolls' total, but she cannot increase the count. Her evidence does not suffice to show genuine issues whether or when Amanda LNU, Fallon, Crane, or Scearce were Defendants' "employees."[24] For that matter, there is merely on-brief assertion to characterize Setiff's extended absence as a maintained employment relationship, rather than the departure and return supported by sworn evidence. In

---

[22] Dolly declared that Setiff "terminated her employment with [HMS] on April 26, 2013 to pursue RN nursing school. She started working at [HMS] again on August 5, 2013, when [HMS] rehired her. Neither defendant had an employment relationship between those dates with Ms. Setiff." (Dolly Decl. ¶ 2.)

[23] The weaknesses in Plaintiff's evidence are similar to those addressed in Escribano-Reyes v. Professional HEPA Certificate Corp., 817 F.3d 380 (1st Cir. 2016), Babich v. Management & Technical Resources, Inc., No. CIV. A. 06-1502, 2008 WL 356480 (W.D. Pa. Feb. 6, 2008), and Wilson, 249 F. Supp. 2d 993. Cf. Revels, 2006 WL 4662503.

[24] With Setiff's exception, the contended employment relationships seem to depend on merely a hinted suspicion that these individuals had unreported, cash-paid employment. Moreover, the case is especially weak for Crane and Scearce, whose respective single day and no days on schedule establish nothing near the requisite week of working days in an employment relationship.

- 11 -
Case 4:14-cv-00046-JLK-RSB   Document 75   Filed 07/19/16   Page 11 of 12   Pageid#: 878

2013, the only year brought into issue, Defendants did not have fifteen or more employees for each working day in each of twenty or more calendar weeks. For purposes of Plaintiff's action, Defendants are not a Title VII "employer."

## IV. CONCLUSION

Plaintiff's evidence fails to show a genuine dispute of fact as to whether the employee-numerosity requirement is satisfied. Because, at material times, Defendants had insufficient Title VII "employees" to be a Title VII "employer," they cannot be liable to Plaintiff under Title VII. I will grant Defendants' motion for summary judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 19th day of July, 2016.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE